STEPHANIE I. SPRECHER
Acting United States Attorney
JEREMY A. GROSS (WY Bar # 7-5110)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
jeremy.gross@usdoj.gov

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2025 MAR 21  AM 10: 35

MARGARET BOTKINS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 25-CV-81-J ) |
| $19,380.00 U.S. Currency | ) ) |
| Defendant. | ) ) |

## UNITED STATES OF AMERICA'S VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff United States of America, by and through the Acting United States Attorney for the District of Wyoming, and Assistant United States Attorney Jeremy A. Gross, brings this verified complaint for forfeiture in a civil action *in rem*, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, against: $19,380.00 in U.S. Currency seized on May 27, 2024 ("Defendant Property"). In support of this complaint, the United States alleges as follows:

### I.  NATURE OF ACTION AND THE DEFENDANTS IN REM

1. The plaintiff is the United States of America

2. Defendant Property includes $19,380.00 in U.S. Currency seized from 1457 Sweetwater Rd., Apt. B3, in Douglas, Wyoming, on May 27, 2024.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

4. This Court has *in rem* jurisdiction over the Defendant Property and venue pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture took place in the District of Wyoming, and pursuant to 28 U.S.C. § 1395(b) because the property to be forfeited was found within the District of Wyoming.

5. All property subject to forfeiture under this complaint was seized in Douglas, Wyoming, within the District of Wyoming. As of the date of this action, the $19,380.00 in U.S. Currency remains in federal custody with the United States Marshal's Service in Denver, Colorado. As set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Property if they are in the government's possession, custody, or control.

## III. BASIS FOR FORFEITURE

6. Plaintiff alleges the Defendant Property is (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act (21 U.S.C. § 841(a)(1)); (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act. 21 U.S.C. §§ 841(a)(1). Therefore, the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## IV. FACTS GIVING RISE TO FORFEITURE

7. On May 27, 2024, at approximately 3:00 p.m. Douglas Police Officers responded to an apartment complex at 1457 Sweetwater Road for a report of domestic violence in progress.

Officers were informed that an adult male with the name of "Kris", was dragging a female by her hair into apartment building B. Responding officers had previously investigated Kristopher Lupton for criminal violations and the description of the female matched his girlfriend, Vanessa Sanchez. As officers were approaching apartment B, where they knew Kristopher Lupton to reside, a neighbor relayed that two nights ago they noticed that Vanessa Sanchez had a large black eye. The neighbor inquired as to what happened and Vanessa Sanchez said she had fallen down some stairs. Another officer contacted the apartment complex property manager to determine if anyone else lived in apartment B3. The property manager relayed that Kristopher Lupton is the only resident living in apartment B3. Officers knocked on the door of apartment B3 and announced their presence. No one answered the door, and nothing could be heard from inside the apartment. It was then determined that one officer would leave to seek a search warrant to determine the welfare of Vanessa Sanchez.

8. On May 27, 2024, at approximately 5:20 pm, Douglas Police Officers executed a signed state search warrant for the residence of Kristopher Lupton, at 1457 Sweetwater Road, Apartment B3, Douglas, Wyoming.

9. Douglas Police Officers contacted Kristopher Lupton and Vanessa Sanchez inside the residence. Officers then escorted Vanessa Sanchez out of the apartment where she could be interviewed. Officers observed large bruising, with black and purple contusions around Vanessa Sanchez's right eye, as well as bruising above her right eyebrow towards her right ear. It was also learned that Vanessa Sanchez had an active warrant for her arrest. Vanessa Sanchez was then advised of her Miranda Rights, and she relayed that understood her rights and would speak with officers. After her arrest, a search of her backpack revealed a pipe containing methamphetamine. Vanessa Sanchez admitted to officers the substance was methamphetamine. Vanessa Sanchez

denied Kristopher Lupton assaulting her and blamed another adult male. She also advised she did not wish to press charges. Sanchez was arrested for the Converse County warrant and charged with misdemeanor possession of methamphetamine.

10. Kristopher Lupton was also advised of his Miranda Rights and relayed that he would speak with officers. Lupton confessed that he had last ingested methamphetamine the night prior. He advised that he did not assault Vanessa Sanchez, and that another adult male had caused her injuries. Lupton also consented to officers continuing a search of his residence. It was agreed that Lupton would accompany officers during the search of his residence and that he could revoke his consent for officers to search at any time. Lupton also relayed that he was unemployed due to having rheumatoid arthritis but was not receiving disability benefits.

11. When officers asked Lupton if there was a large amount of cash, or firearms inside the residence (Lupton is a convicted felon and prohibited from possessing firearms), he advised he had approximately $1,000 in cash in his bedroom and denied possessing any firearms since he is a convicted felon. Officers continued their search and located $19,380.00 in U.S. Currency hidden inside a framed poster on the wall of Kristopher Lupton's bedroom and inside a hidden box adhered underneath a stool inside the residence. Officers also found misdemeanor amounts of marijuana, and methamphetamine, hundreds of small plastic baggies (indicative of drug distribution), pipes and bongs with residue, numerous empty fillable gel capsules, a grinding device with residue, a 50-gram weight for a scale, two cell phones, and three firearms and ammunition. In my training an experience, individuals involved in drug distribution will minimize or leave out facts relevant to questions posed to them when they believe law enforcement will not locate contraband or illicitly gained drug proceeds. In this case, Lupton omitted the fact that he possessed firearms

because he was a prohibited possessor and a that he had a significant amount of additional cash hidden in his bedroom because the cash was derived from the sale of controlled substances.

12. The $19,380.00 in U.S. Currency was stored in rubber band bundles of; $980.00, $1,000.00, $1,000.00, $10,000.00 (10 separate bundles of $100.00 bills), and an envelope totaling $6,400.00 U.S. Currency (6 separate paperclipped bundles of $100.00 bills and bundle with 4 $100.00 bills). Also seized and indicative of drug possession and distribution was misdemeanor amounts of marijuana, and methamphetamine, hundreds of small plastic baggies (indicative of drug distribution), pipes and bongs with residue, numerous empty fillable gel capsules, a grinding device with residue, a 50-gram weight for a scale, two cell phones, and three firearms and ammunition. In my training and experience, individuals involved in the purchase and sale of controlled substances often keep cash delineated in specific amounts to make it quicker and easier to conduct controlled substance transactions. The ability to quickly pick out the correct amount of cash reduces the time required to conduct an illicit transaction, therefore minimizing the time spent conducting the transaction.

13. Kristopher Lupton was arrested and charged with two counts of misdemeanor possession of a controlled substance: marijuana and methamphetamine.

14. On June 2, 2024, a Douglas Police Officer reviewed phone calls made by Kristopher Lupton while detained at the Converse County Detention Center on May 28, 2024. Lupton called an unknown male and said that he was being held on charges and "they got three of them" (believed to be referring to the three seized firearms). Lupton also said, "It's very important what I am going to need you to do too." Lupton then told the unknown male to go to Lupton's residence and look in the hope chest and to "clear that out for me." Lupton proceeded to tell the unknown male to go into his bedroom and "go underneath in the box spring and pull that out, get

it outta there." Lupton then proceeded to tell the unknown male to retrieve a backpack behind the door. Lupton also directed the unknown male to the apartment bathroom "where the toilet paper is, move the damn thing over and it should pop right out." Lupton further directed the unknown male to go outside to an orange car and remove the hidden items inside the exhaust as well clean out the trunk. Based on my experience and training, I believe that Lupton was instructing this unknown male to remove additional controlled substances or firearms that had been missed while searching Lupton's apartment.

15. On May 29, 2024, Lupton signed a consent to search for his Samsung Galaxy 8 cellular phone. On June 9, 2024, Douglas Police applied for and were granted a search warrant for an iPhone 12 also belonging to Lupton. Nothing for investigative purposes was identified on the Samsung phone. An extraction from the iPhone revealed text messages from Lupton indicative of drug distribution and buying and selling firearms. Lupton received and sent numerous text messages from December 5, 2023, through May 17, 2024, about the sale, delivery, and prices of controlled substances.

16. On May 29, 2024, Drug Enforcement Special Agent Justin Vanderbilt interviewed Kristopher Lupton at the Converse County Detention Center in Douglas, Wyoming. Lupton was advised of his Miranda Rights and agreed to answer questions. Lupton advised that he had a bank account at the Converse County Bank in Douglas, Wyoming, and that he did not distrust banks. He indicated that the Defendant Property was savings for a down payment on a house. SA Vanderbilt noted that on May 27, 2024, Lupton told Douglas Police Department Officers that he only had about $1,000.00 in cash in his apartment. Lupton relayed that he paid $25.00 per month for rent for his apartment and that he received assistance from a state program paying for his rent. Lupton indicated he was also receiving $150.00 per week from unemployment and received food

stamps. SA Vanderbilt noted that on May 27, 2024, Lupton told Douglas Police Department Officers that he had applied for unemployment but not receiving any benefits. Lupton stated that he suffers from rheumatoid arthritis and that "doing dope" helps him. He represented that a friend had lent him two of the firearms seized from his apartment, and that the shotgun belonged to a "friend of a friend," which he had for self-defense. Lupton indicated that he was concerned about a "smash and grab" but would not elaborate or provide details. Lupton hid the Defendant Property because he was saving money, afraid people might steal it and said he couldn't put it in the bank because they conduct audits. Lupton relayed he has several individuals that he purchases methamphetamine from and could get one quarter of an ounce of methamphetamine every couple of months. Lupton also admitted to distributing methamphetamine for others to receive methamphetamine in return. In my training and experience, I know that a quarter of an ounce of methamphetamine is approximately seven grams. A typical user of methamphetamine can easily consume one half to one gram per day. Therefore, I believe that Lupton significantly minimized the amount of methamphetamine he purchased and/or the timeframe between his purchases. Additionally, text messages from Lupton's iPhone indicated that Lupton purchased at least pound quantities of methamphetamine in March of 2024 and attempted to sell multiple ounces of methamphetamine to at least one individual in May of 2024.

### COUNT ONE – FORFEITURE
(18 U.S.C. § 981(a)(1)(G))

17. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 15 above as if fully set forth herein.

18. As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable believe that the government will be able to meet its burden of proof at trial. Specifically, there exists probable cause to believe that the Defendant Property constitutes: (1) money furnished

or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

### PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED this 21st day of March 2025.

STEPHANIE I. SPRECHER
Acting United States Attorney

By: _____
JEREMY A. GROSS
Assistant United States Attorney

## VERIFICATION

I, Justin Vanderbilt, a Special Agent with the Drug Enforcement Administration, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *In Rem*, and that the Complaint is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct to the best of my knowledge and belief.

Executed on this 20th day of March 2025.

_____
Special Agent Justin Vanderbilt
Drug Enforcement Administration